William Jesse WHITE, Appellant (Defendant and Cross-Complainant below),

v.

The WYOMING NATIONAL BANK OF CASPER, as Executor of the Estate of Jesse M. White, Deceased, Appellee (Plaintiff below),

Mrs. Lena Chapman, Mrs. Theresa Kurpies, (Defendants below),

Father Flanagan's Boys' Home and St. Joseph's Orphanage, Appellees (Defendants below).

No. 3044.

Supreme Court of Wyoming.

Feb. 21, 1962.

Donald E. Jones, Torrington, and R. Jerry Hand, Casper, for appellant.

Richard A. Tobin, Casper, and Joseph F. Maier, Torrington, for appellees.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

The executor of the estate of Jessie M. White, deceased, brought an action against the several beneficiaries under her will, seeking by declaratory judgment to determine its authority to sell certain property for a price less than that mentioned by the testatrix in a provision for the sale.

There is no dispute about the facts. The will, dated March 26, 1960, consisted of four typewritten pages, apparently drafted by the testatrix herself. The first of its five sections directed debts and expenses to be

paid out of the estate, the second nominated the executor and authorized the sale of the estate property, the third and fourth nominated the attorney and trustee, respectively, and the fifth, quite lengthy, contained a provision regarding the sale of the hotel property but related principally to a trust fund to be established for the benefit of William Jesse White, her son, with a provision that the balance go to Theresa Kurpies and Lena Chapman or the survivor at the time of her son's death and if neither survived that the balance be paid to Father Flanagan's Boys' Home at Boys Town, Nebraska, and St. Joseph's Orphanage at Torrington, Wyoming, share and share alike.

The two portions of the will principally emphasized by the litigants were:

"I NOMINATE, CONSTITUTE, AND APPOINT. WYOMING NATIONAL BANK, AS EXECUTOR, OF MY ESTATE, AND THAT THEY BE ENPOURED [sic] TO SELL AND DISPOSE OF ALL REAL AND MIXED PROPERTY, OR INTEREST THEREIN, OF WHICH I MAY BE SEIZED OR POSSESSED OR TO WHICH I MAY BE IN ANY MANNER ENTITLED OR IN WHICH I MAY BE [sic] INTEREST AT THE TIME OF MY DEATH."

"I HEREBY DIRECT MY EXECUTOR TO SELL AS SOON AFTER MY DEATH. AS IS PRACTICAL MY HOTEL PROPERTY AS DESCRIBED. AMERICAN HOTEL 244 SOUTH CENTER, STREET CASPER WYOMING, NATRONA COUNTY. LOTS NINETEEN AND TWENTY. BLOCK TWO. FOR ONE HUNDRED AND FIFTY THOUSAND DOLLARS ($150.000.) AND ALL MONEY FROM SAID SALE IS TO BE PUT IN THIS SAID TRUST FUND."

The evidence developed the fact that the American Hotel property, which had been appraised for some $60,000, was comprised of a downstairs portion, rented to various business institutions for some $600 per month, and an upstairs hotel portion, which the executor had been unable to operate profitably; that the executor had advertised this property for sale but had received only one bid of $61,250; that the other property in the estate amounted to approximately $70,000; and that the estate should net after expenses about $100,000. It was also disclosed that deceased had listed the hotel property at different times before her death, once at $85,000, and another time. for $100,000.

The trial court, after stating jurisdictional requisites, found that the executor was authorized to sell the hotel property and was not restricted in the sale to the price of $150,000 but might sell at such price and upon such terms as it could obtain in accordance with Wyoming laws governing the sale of real property from decedents' estates.

William Jesse White, son of deceased, has appealed, contending that the general powers granted to the executor by the testatrix must yield to specific directions, that the language of the quoted portion of paragraph five is clear and must be construed as written, that the word "direct" is mandatory, that to allow the sale of the property for less than the mentioned $150,000 would be an unauthorized rewriting of the will, and that the directions as to the manner of selling the real property are binding upon the executor.

Appellant to support his first point cites In re Lendecke's Estate, 79 Wyo. 27, 329 P.2d 819, 822, for the rule that where there is an inconsistency between a general and a specific provision in a will the latter will prevail regardless of the order in which it stands but especially if the specific follows the general. While this is a correct statement of law, it is not applicable in the present situation, at least to the exclusion of correlative principles such as were implicit from the decision in the Lendecke case. If there are clauses in a will which are apparently inconsistent and repugnant, the court

should, if possible, harmonize them so as to give effect to each in accordance with the general intention of the testator as appears from the language of the entire will and in the light of the circumstances surrounding its execution.

Appellant next argues that the direction of the will to sell the hotel property for $150,000 is clear and definite and insists that such words as were there employed must be given their usual and customary meaning. He cites Koezly v. Koezly, 31 Misc. 397, 65 N.Y.S. 613. In that case one clause of the will provided, 65 N.Y.S. at 614:

> " 'If my said wife does not desire to care for the house as aforesaid, the same may be sold by her, as my executrix, but for a sum not less than twenty-eight thousand (28,000) dollars beyond incumbrances; and the proceeds, representing the equity in the said house, shall be kept as a trust fund * * *.' "

A portion of the court's opinion is quoted by counsel as being persuasive in the instant matter, 65 N.Y.S. at 615:

> "There is no ambiguity here, and, even if the testator had an exaggerated idea of the fee value of the property, we cannot on that account make a new will for him. It is, in my opinion, clear from the language which he employed that the testator intended that the property, if sold, should produce, as the proceeds of the equity, the sum of at least $28,000."

Several factors distinguish the Koezly case from the one at bar. There the executrix was permitted, but not directed, to sell the property, the limitation as to price was positive in the use of the words "not less than," and the principal question before the court concerned the meaning of the words "beyond incumbrances," so that no determination in that case dealt with the problem before us more than peripherally. Under the circumstances, the Koezly decision could scarcely be considered as precedent.

Appellant maintains that the word "direct" must be construed as mandatory, at least prima facie, but cites only the most general encyclopedic authority for the contention. Appellees, conceding that testatrix directed that the hotel property be sold for $150,000, argue that from the face of the instrument it is clear that such expression was merely precatory and inserted as a guide for the executor without being a restriction on the power of sale. They rely on Ford v. Ford, 70 Wis. 19, 33 N.W. 188, 5 Am.St.Rep. 117, wherein a will provided, 33 N.W. at 190:

> " '(4) I direct that all properties in Schedule A, attached to this instrument, and bearing my signature, shall be converted, as soon as practicable after my decease, into good rentable "inside" property in Kansas City, Mo., at schedule prices, or as much better as may be.' "

The court in holding that the stated prices were not mandatory said, 33 N.W. at 197:

> " * * * He directs, in effect, that the several pieces of land mentioned shall be so converted as soon as practicable after his death. Is such purpose to be frustrated merely by adding 'at schedule prices, or as much better as may be?' On the contrary, were not those words added as a guide to his executor, or for the purpose of stimulating purchasers to pay a larger price? * * *"

The same will was construed in Ford v. Ford, 80 Mich. 42, 44 N.W. 1057, 1060, with a like result, the court saying:

> " * * * we are satisfied that it was the intention of the testator, as indicated by the terms of the will, to give to his executor the absolute power to sell and convey the Michigan lands, and this without condition or limitation; the words * * * 'at schedule prices, or as much better as may be,' only being used by him as advisory to the executor to obtain the best possible price. * * *"

We think the Ford cases constitute persuasive authority that when an executor is directed to sell property as soon as "practical" a provision as to the price which is to be received is precatory.

Appellant contends that nowhere in the will did the testatrix authorize the executor to sell the property for less than $150,000 and insists any contention to the contrary is only a surmise, supposition, or inference. As is reflected in other authorities cited by appellant, the court must look to the intention of the testatrix as found from the context of the entire will. A consideration of the will as a whole indicates that testatrix was interested in having her property sold, in the payment of certain minor bequests, in the establishment of a trust fund from which her son would receive certain specific payments per month which could not in any way be alienated or made subject to charge, and that the balance, if any, upon the son's death go over to certain named beneficiaries. These appear to have been her primary intentions, and to that end she directed that the hotel property be sold as soon as practical. Under such circumstances, the insertion of an amount could not reasonably be interpreted as mandatory.

It is asserted that the executor has no free reign as to the manner in which he sells real property, that the power to sell must be granted by statute or by the will and that the executor is obligated to comply strictly with the directions as to the manner of selling. In that connection, appellant quotes § 2–283, W.S.1957, emphasizing that if directions are given in a will as to the mode of selling or the property to be sold they must be observed. Here the question relates not to the mode of selling but to the amount to be received, and consequently, the statute is of no assistance.

Affirmed.